# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1482

_____

United States of America

*Plaintiff - Appellee*

v.

Daniel Louis Jackson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: November 15, 2018
Filed: January 22, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

In October 2017, a jury found Daniel Louis Jackson guilty of all counts of a four-count Superseding Indictment for his role in a bank robbery in Hopkinton, Iowa: (1) Armed Bank Robbery and Aiding and Abetting Armed Bank Robbery; (2) Aiding and Abetting the Use, Carrying, and Brandishing of a Firearm During a Crime of Violence; (3) Conspiracy to Commit Armed Bank Robbery; and (4) Conspiracy to Use, Carry, and Brandish a Firearm During a Crime of Violence. Jackson appeals,

challenging (1) the admission of three Facebook videos into evidence and (2) the district court's[1] instruction on the elements of aiding and abetting the use, carrying, or brandishing of a firearm during a crime of violence. We affirm.

## I.     Background

On October 17, 2016, Daniel Jackson and his co-defendant Jason Centeno traveled from Muscatine, Iowa, to the Citizens State Bank of Hopkinton, Iowa. While Jackson waited in the car, Centeno entered the bank and took video of its interior. Three days later, Jackson (in the company of Centeno and their roommate Edgar Pauley) went to the Muscatine Wal-Mart and purchased black pantyhose, ski hats, and zip ties.

On the morning of October 21, 2016, Jackson and Centeno donned the disguises they purchased at Wal-Mart and entered the bank. Once inside, the two men leapt over the counter, whereupon Jackson displayed a knife, used a zip tie to secure a teller's hands behind her back, and took money from her drawer. Meanwhile, Centeno brandished a .38 special revolver and demanded that a second teller give him the money from her drawer. Having accomplished his task with the first teller, Jackson approached the second teller and ordered her to the ground.

While this was going on, the bank's manager entered the bank, having just re-parked his car to find the robbery in progress. Jackson accosted him, ordered him to the ground, and secured his hands with a zip tie, inadvertently dropping a zip tie on the floor. Jackson's DNA was later found on both zip ties.

---

[1] The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

Jackson and Centeno made their getaway with approximately $8,225 of purloined cash in their possession. The pair then fled the state with Pauley, leaving the .38 revolver with Centeno's mother in New York and eventually making their way to Daytona Beach, Florida, where they were arrested.

Prior to trial, defense counsel moved to exclude three videos that Jackson messaged to his Facebook friends in the days leading up to the robbery. The first video, sent to "EBK Rich," showed Jackson driving through a residential area and twice telling Centeno to fire the revolver toward the houses. Centeno complied. EBK Rich and Jackson also had a conversation through Facebook Messenger. Jackson said that he was "bout to do some real shit." EBK Rich then asked Jackson, "What you about to do?" Jackson responded with two words: "Bank" and "Robbing."

The second video showed Centeno firing two rounds from the revolver into an abandoned building while wearing the same jacket he wore during the robbery. Centeno then passed the gun to Jackson, who also fired two rounds.

The third video showed Jackson displaying twenty rounds of ammunition and stating, "Get what you want. I went to the store and got bullets with no, no ID." He picked up a black .38 special revolver and said, "I got this pretty baby." He then pointed the gun at the camera and dry fired it.

The district court denied Jackson's motion in limine, ruling that the videos were intrinsic evidence that "tend[ed] to logically prove the elements of the crimes at issue." In the alternative, the court found that if the evidence was extrinsic to the charged crimes, it would be admissible under the exceptions of Federal Rule of Evidence 404(b).

On October 2, 2016, the government and defense submitted joint proposed jury instructions. "Jointly Proposed Instruction No. 7" dealt with the elements of the

-3-

principal offense of using, carrying, or brandishing of a firearm during a crime of violence. "Jointly Proposed Instruction No. 8" included the elements of aiding and abetting. The district court issued draft versions of Instructions 7 and 8 that were identical substantively to the proposed instructions. The court instructed the parties to raise any objections to the draft instructions. Neither party objected to the instructions set forth in 7 and 8. The court filed its final jury instructions. In the final pretrial conference, the issue of instructions was raised again:

> THE COURT: The jury instructions, on the docket at 123-1, is the set that I intend to read to the jury today, minus the verdict form. . . . But as far as the instructions that would be read today, again, they're at Number 123-1, does any party have any record to make? Ms. Williams?
>
> MS. WILLIAMS [the AUSA]: No, Your Honor.
>
> THE COURT: Ms. Johnston?
>
> MS. JOHNSTON [defense counsel]: No, Your Honor.

Jackson proceeded to trial on October 10, 2017. On the third day of trial, the jury returned a verdict of guilty against Jackson on all four counts. The district court sentenced Jackson to a total of 180 months' imprisonment to be followed by three years of supervised release. Jackson timely appealed.

## II.    Discussion

### A.    Admission of Facebook Videos

Jackson argues that the district court abused its discretion when it admitted the three Facebook videos into evidence as either intrinsic evidence or extrinsic evidence under one of the exceptions to Rule 404(b). See United States v. Engler, 521 F.3d 965, 972 (8th Cir. 2008) (citing United States v. McCracken, 110 F.3d 535, 542 (8th

-4-

Cir. 1997)) (standard of review). Jackson also asserts that the evidence is inadmissible under Federal Rule of Evidence 403 because the probative value of the videos was substantially outweighed by their prejudicial effect.

We agree with the district court that the videos constitute intrinsic evidence. "[W]here evidence of other crimes is 'so blended or connected . . . or tends logically to prove any element of the crime charged,' it is admissible as an integral part of the immediate context of the crime charged. . . . [I]t is not extrinsic and therefore not governed by Rule 404(b)." United States v. Phelps, 168 F.3d 1048, 1057–58 (8th Cir. 1999) (first alteration in original) (quoting United States v. Swinton, 75 F.3d 374, 378 (8th Cir. 1996)). The video evidence was highly probative as evidence tending logically to prove the elements of the offenses. The videos linked Jackson to the acquisition of the firearm and ammunition days before the robbery, showed Jackson's knowledge of Centeno's use and possession of the firearm in the days leading up to the robbery, and—when coupled with the messages exchanged with EBK Rich—connected the firearm with plans to commit a bank robbery.

Jackson's claim that the evidence is excludable as unfairly prejudicial under Rule 403 relies primarily on the First Circuit's decision in United States v. Rose, 104 F.3d 1408 (1st Cir. 1997). Rose is unpersuasive and distinguishable from the facts in this case. The videos showing Centeno and Jackson shooting at an abandoned industrial building and Jackson dry firing the gun at the camera were far less likely to create unfair prejudice than the photo in Rose that showed the defendant pointing a potentially loaded firearm at a friend's head. See United States v. Brooks, 715 F.3d 1069, 1077 (8th Cir. 2013) (distinguishing Rose). Although the video showing Centeno following Jackson's instructions to fire the gun toward houses in a residential area is arguably more prejudicial, its probative value is greater as it shows a personal and controlling relationship between the co-defendants and sheds light on Jackson's interactions with Centeno. Under these circumstances, we cannot say that

the district court abused its discretion in admitting the videos based on a finding of high probative value in comparison to the potential prejudice.

### B. Aiding and Abetting Jury Instruction

Jackson next argues that the jury instruction on aiding and abetting the use, carrying, or brandishing of a firearm during a crime of violence was erroneous because it did not require the jury to find that he knew in advance that Centeno would brandish a firearm during the bank robbery. To achieve a conviction for aiding and abetting an offense under 18 U.S.C. § 924(c), the government must prove:

> (1) that a predicate crime of violence or drug trafficking was committed; (2) that a gun was used in a prohibited manner during the predicate offense; (3) that the defendant facilitated the firearm use, the predicate crime, or both; and (4) that the defendant had advance knowledge that one of his confederates would use or carry a gun during and in relation to the commission of the predicate crime, or would possess a gun in furtherance of the predicate offense.

United States v. McArthur, 850 F.3d 925, 941 (8th Cir. 2017) (citing Rosemond v. United States, 134 S. Ct. 1240, 1245, 1247, 1248–51 (2014)). Jury Instruction No. 8, on the other hand, only required that Jackson (1) "knew that the crime charged was being committed or was going to be committed," (2) "had enough advance knowledge of the extent and character of the crime that he was able to make the relevant choice to walk away from the crime before all of the elements were complete," and (3) "knowingly acted in some way for the purpose of causing, encouraging or aiding the commission of the crime charged." Jackson argues that the vague references to "the crime" allowed the jury to convict him if it found that he merely had advance knowledge of the robbery and not necessarily of the use, carrying, or brandishing of the firearm.

Generally, we review an unobjected-to instruction for plain error. United States v. Tobacco, 428 F.3d 1148, 1150 (8th Cir. 2005). Waived claims, however, are unreviewable on appeal. United States v. Wisecarver, 598 F.3d 982, 988 (8th Cir. 2010) (citing United States v. Booker, 576 F.3d 506, 511 (8th Cir. 2009)). It is well-established in this circuit that "when a defendant specifically requests a particular instruction, he gives up the right to appeal any error in that instruction." United States v. Mariano, 729 F.3d 874, 881 (8th Cir. 2013). Jackson "cannot challenge on appeal the court's giving of the precise instruction that he requested" and never objected to. Id. at 882. See also United States v. Tillman, 765 F.3d 831, 836 (8th Cir. 2014) (citing Wisecarver, 598 F.3d at 988) ("Because Tillman jointly proposed the disputed instruction and never objected, she waived the right to contest it."). Jackson's challenge is unreviewable on appeal.

## III.   Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____