# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3190

_____

United States of America

*Plaintiff - Appellee*

v.

Cedric Antonio Wright

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: December 18, 2020
Filed: April 16, 2021

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

SMITH, Chief Judge.

Cedric Antonio Wright was arrested after he robbed a cellphone store. The car used during the robbery had been stolen by a carjacker the previous day. Wright's involvement in the robbery thus implicated him in the carjacking, as well as several firearm counts. He pleaded guilty to Hobbs Act robbery and conspiracy to commit Hobbs Act robbery. *See* 18 U.S.C. §§ 2, 1951. A jury convicted him of carjacking, *see*

18 U.S.C. § 2119(1); two counts of carrying a firearm during and in relation to a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A)(i)–(ii); and possession of a firearm by a prohibited person, *see* 18 U.S.C. § 922(g)(1).

Wright moved for a judgment of acquittal and a new trial, arguing that there was insufficient evidence to support the verdicts and that the district court gave erroneous jury instructions and made erroneous evidentiary rulings. The district court[1] denied both motions. At sentencing, the district court enhanced Wright's sentence pursuant to U.S.S.G. §§ 2K2.1(b)(1)(A) and 2B3.1(b)(5). On appeal, Wright argues that the district court erred by (1) denying his motion for a new trial, (2) denying his motion for a judgment of acquittal, and (3) applying the sentencing enhancements. We affirm.

## I. *Background*

JB, who was driving a black Honda, had her car stolen from her at gunpoint in Cedar Rapids, Iowa, on October 22, 2017. JB identified the attacker as a black male wearing a black mask and camouflage. The attacker had pointed a black handgun at JB's head and told her to exit the car. She complied, and her assailant drove away in her car. JB's cellphone, credit cards, purse, and personal items remained in the car.

The day after the carjacking, JB's mother used a cellphone location app to locate JB's stolen phone. The app located JB's phone at 12th Avenue and 15th Street SE in Cedar Rapids. The same day, Wright visited a friend, Gage Rupp, at a residence located two doors away from that address. This was the home of Cecilia Givens, Rupp's girlfriend.

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

While Wright was there, Rupp asked Derek Ford to pick him up at Givens's home. When Ford arrived in his white van, Rupp and Wright both entered the van. Wright told Ford to drive across town so they could "use [his] sister's car." Trial Tr., Vol. 2, at 143:8–9, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 282. What he called his "sister's car" was actually JB's stolen Honda. Wright, Rupp, and Ford got into the Honda, and Ford then drove them to a Sprint cellphone store in Cedar Rapids.

As the store was closing, Wright and Rupp exited the car. Ford stayed in the car while Wright and Rupp robbed the store. Security cameras captured Wright entering the store with his hand in the air, while Rupp kept his hand around his waistband. The security footage did not show a gun. A Sprint employee was the only person in the store at the time. He later testified that he "could not say for certain that there was a gun in [either of their] hand[s]," but that Wright and Rupp were "carrying themselves in a way that they had one." Trial Tr., Vol. 1, at 87:9–10, 21–22, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 281. Wright and Rupp soon emerged from the store with stolen phones, including a "bait" phone that allowed the police to track them.

Ford testified that when Wright and Rupp got back into the Honda, Rupp said it was "sweet" that they did not need to use a gun. Trial Tr., Vol. 2, at 150:8. Wright then revealed that the Honda was stolen and instructed Ford to drive back to Ford's van. After they reentered Ford's van and attempted to flee, the police stopped them. Ford testified that as he stopped the van for the police, Wright took out a handgun and told Ford to stow it away inside the van. When Ford refused, Wright tossed the gun towards the front of the van, where it landed behind the driver's seat. Police recovered a loaded black Smith & Wesson .40-caliber handgun from the floor of the van, as well as cash and cellphones—valued at over $38,000—that had been taken from the store.

Wright eventually admitted his involvement in the robbery but denied involvement in the carjacking and firearms offenses.

After determining that the car used in the robbery was JB's car, police informed JB's family. JB used an app called "MobilePatrol" to try to identify the person who carjacked her. "MobilePatrol" displays pictures of people who were recently arrested. JB found Wright on the app and asked her mother if he was involved in the Sprint store robbery. Her mother confirmed that he was. Around the same time, JB saw a news story stating that two people were arrested in connection with the robbery. The story featured pictures of Rupp, who is white, and Wright, who is black. A few days later, police presented JB with a photo line-up that included a photo of Wright. It did not include a photo of Ford, who is also black. JB identified Wright as the carjacker.

Investigators discovered that shortly after the carjacking, someone attempted to purchase shoes online using JB's stolen credit card. The shoes were to be shipped to Indiana. The phone number associated with the attempted purchase belonged to Rupp, and his call history included a call to an Indiana phone number. Investigators also discovered that the handgun found in Ford's van after the robbery was registered to an individual named Saleem El-Amin and that El-Amin and Wright were "friends" on Facebook.

Wright's Facebook account contained a photo of him wearing camouflage shorts, several photos of a black Smith & Wesson handgun, a video of Wright holding a black handgun and counting cash, a photo of a black male wearing a black ski mask and holding cash, photos of Wright holding a partially silver handgun, and a photo of Wright holding one gun with three more guns at his feet. His Facebook entries also contained conversations in which Wright discussed the Smith & Wesson handgun and indicated that he wanted to trade it, writing that he had a "40 for trade." Government's Trial Ex. 16, at 1, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 185-25. In one conversation regarding the gun,

-4-

El-Amin said to Wright, "Let me know before you do anything wit that b\*\*ch." *Id.* at 2.

Wright was charged with carjacking, in violation of 18 U.S.C. § 2119(1) ("count 1"), two counts of carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i)–(ii) ("count 2" and "count 7"); possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) ("count 3"); interference and attempted interference with commerce by threats and violence, in violation of 18 U.S.C. §§ 2 and 1951 ("count 5"); and conspiracy to interfere and attempt to interfere with commerce by threats and violence, in violation of §§ 2 and 1951 ("count 6").

Wright pleaded guilty to counts 5 and 6, but he proceeded to trial on counts 1, 2, 3, and 7. Regarding count 3, the parties stipulated that Wright was a "prohibited" person within the meaning of § 922(g)(1). A jury found him guilty on all counts.

Wright moved for a judgment of acquittal, arguing that there was insufficient evidence to sustain any of the jury's verdicts. He also moved for a new trial, arguing that (1) the guilty verdicts were against the weight of the evidence; (2) the district court erroneously instructed the jury regarding the "intent" requirement for carjacking under § 2119(1) and the definition of "carrying" a firearm under § 924(c);[2] and (3) the district court erroneously admitted several prejudicial government exhibits.

The district court rejected both motions. It concluded that (1) there was sufficient evidence to sustain each conviction; (2) even under the "more lenient standards for a motion for new trial," Wright failed to show that the verdicts were

_____

[2]The jury instruction for the § 2119(1) count was jury instruction 5. The instructions for the § 924(c) counts were jury instructions 6 and 8.

against the weight of the evidence, Order Den. Mot. Acquittal at 10, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 219; (3) its jury instructions properly stated the law as articulated by the Supreme Court and Eighth Circuit;[3] and (4) it did not err in admitting the challenged government exhibits.

At sentencing, the district court imposed a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) because it found that Wright was responsible for three to seven firearms in relation to his § 922(g)(1) conviction. It concluded that this enhancement was supported by a preponderance of the evidence, including a photo of Wright with four different handguns and his "direct involvement with other firearms." Sentencing Tr. at 40:7, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 280. The district court also imposed a two-level sentencing enhancement for carjacking pursuant to U.S.S.G. § 2B3.1(b)(5).

Wright timely appeals. On appeal, he argues that the district court erred by (1) denying his motion for a new trial based on its erroneous admission of prejudicial government exhibits and erroneous jury instructions; (2) denying his motion for a judgment of acquittal based on sufficiency of the evidence; and (3) imposing sentencing enhancements pursuant to § 2K2.1(b)(1)(A) and § 2B3.1(b)(5).

## II. *Discussion*
### A. *Admissibility of Government Exhibits at Trial*

We review the district court's evidentiary rulings for an abuse of discretion, giving "great deference to the district court's balancing of the probative value and

---

[3]The district court explained that it relied on *Holloway v. United States*, 526 U.S. 1 (1999), in crafting jury instruction 5, and on the Eighth Circuit Model Criminal Jury Instruction 6.18.924C and *United States v. Nelson*, 109 F.3d 1323 (8th Cir. 1997), in crafting jury instructions 6 and 8. *See* Order Den. Mot. Acquittal at 11.

prejudicial impact of the evidence." *United States v. Huyck*, 849 F.3d 432, 440 (8th Cir. 2017) (quotation omitted).

Generally, relevant evidence is admissible at trial. Fed. R. Evid. 402. "Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The threshold for relevance is quite minimal." *United States v. Croghan*, 973 F.3d 809, 823–24 (8th Cir. 2020) (quotation omitted). Even when evidence is relevant, however, the trial court may exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. But "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is *unfairly* prejudicial." *Huyck*, 849 F.3d at 440 (quotation omitted). "Unfair prejudice means an undue tendency to suggest decision on an improper basis, including evidence which is so inflammatory on its face as to divert the jury's attention from the material issues in the trial." *Id.* (cleaned up).

Under Rule 404(b), evidence of wrongful conduct other than the specific conduct at issue is only admissible in certain circumstances. Fed. R. Evid. 404(b). Rule 404(b)(1) prohibits using "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such *extrinsic* evidence is only allowed to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2).

Rule 404(b) does not apply, however, to evidence of other wrongful conduct if that evidence is *intrinsic* to the charged offense. *United States v. Brooks*, 715 F.3d

1069, 1076 (8th Cir. 2013). Evidence of other wrongful conduct is intrinsic when it is offered to "provide[] the context in which the charged crime occurred" and "complete[] the story or provide[] a total picture of the charged crime." *Id.* (quotation omitted); *see also United States v. Phelps*, 168 F.3d 1048, 1057 (8th Cir. 1999) ("Bad acts that form the factual setting of the crime in issue or that form an integral part of the crime charged are not part of Rule 404(b)'s coverage." (cleaned up)). "Where evidence of other crimes is so blended or connected or tends logically to prove any element of the crime charged, it is admissible as an integral part of the immediate context of the crime charged." *United States v. Jackson*, 913 F.3d 789, 792 (8th Cir. 2019) (cleaned up).

Wright argues that the district court abused its discretion in admitting government exhibits 14, 16, 17, 21, and 29–32. We address his arguments in turn.

### 1. *Exhibit 14*

Exhibit 14 is a photo from Wright's Facebook account of a black male with arm tattoos wearing a black mask and holding cash. Wright argues that this photo was irrelevant, cumulative, and unfairly prejudicial. However, we find that it was relevant for two reasons: (1) the arm tattoos helped identify Wright as the subject of the photo because the same tattoos are visible on Wright in Exhibit 21, and (2) the photo corroborated JB's physical description of the carjacker, including that he wore a similar black mask. The photo's probative value was not outweighed by the danger of *unfair* prejudice; even if the presence of cash was prejudicial, it was not "so inflammatory on its face as to divert the jury's attention from the material issues in the trial." *See Huyck*, 849 F.3d at 440 (quotation omitted).

Wright further contends that the photo was inadmissible under Rule 404(b) because "the Government clearly meant to imply that Mr. Wright obtained that cash in an illegal fashion." Appellant's Br. at 9. But Rule 404(b) is not applicable here

because the photo does not contain evidence of extrinsic wrongful conduct; the government introduced it to help identify Wright as the carjacker—not as evidence of another "crime, wrong, or act" to prove Wright's character. *See* Fed. R. Evid. 404(b)(1).

### 2. *Exhibits 16 and 17*

Exhibit 16 contains Facebook conversations from September 25, 2017, between Wright and Rupp, and Wright and El-Amin. In relevant part, Wright says he has a "40 for trade" and is "trad[ing] only for a glizzy." Government's Trial Ex. 16, at 1. El-Amin says to Wright, "Let me know before you do anything wit that b**ch," an apparent reference to Wright's gun. *Id.* at 2. Wright also says, "You know I need glizzy." *Id.* Exhibit 17 features another Facebook conversation from the same day, in which Wright sends several photos of a black handgun and says it is a "sdve smith and Wesson 40." Government's Trial Ex. 17, at 1, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 185-26. The other party asks if Wright is "tryna get ah glick," to which Wright replies, "Yea." *Id.* The investigating officer testified that "glizzy" and "glick" mean a "Glock pistol," Trial Tr., Vol. 2, at 221:15–16, 224:5–8, and that a "40 for trade" means a .40-caliber gun for trade, *id.* at 221:9–22.

Wright argues that these exhibits were irrelevant, confusing, and contained inadmissible hearsay. We disagree. These were relevant because they showed that Wright had a black .40-caliber Smith & Wesson handgun—the exact type of gun found in Ford's van after the robbery—prior to the carjacking and robbery. This is similar to the challenged evidence in *Brooks* and *Jackson*, where images showed the defendants with the firearms they used during their crimes. *Brooks*, 715 F.3d at 1077 (holding that images of the defendant holding a firearm were "highly probative as the firearm in the photos and video matched the firearm that police recovered from the scene of the van theft"); *Jackson*, 913 F.3d at 792 (holding that videos of the

defendant with firearms recovered from the robbery were "highly probative" because they "linked [him] to the acquisition of the firearm and ammunition days before the robbery, [and] showed [his] knowledge of [his co-defendant's] use and possession of the firearm in the days leading up to the robbery").

The fact that these conversations occurred one month prior to the carjacking does not, as Wright contends, render them irrelevant. *See, e.g.*, *United States v. Rembert*, 851 F.3d 836, 839 (8th Cir. 2017) (finding that a video from over two years prior to the charged offense was not "overly remote in time"); *United States v. Bassett*, 762 F.3d 681, 687 (8th Cir. 2014) (finding that a prior act that occurred about eleven years before the charged offense was admissible). And although some terms in the conversations may have been foreign to the jury, we agree with the district court that any confusion would have been mitigated by the testimony of the government's witness, who explained the meaning of the terms.

Finally, these conversations did not contain inadmissible hearsay. Statements made by other parties in online chat conversations are not hearsay if they "were not offered for their truth but rather to provide context for [the defendant's] responses." *Manning v. United States*, 738 F.3d 937, 943 (8th Cir. 2014). Here, the statements of the other persons in the conversations were not introduced for their truth but to provide context for Wright's statements.

### 3. *Exhibit 21*

Wright argues that Exhibit 21—a video of him with a firearm in his lap while counting a large amount of cash—was inadmissible under Rule 403 because it was cumulative and unnecessary. We find that this video was probative because (1) the gun in Wright's lap matched the gun seized by police, and (2) the visible tattoo helped identify Wright as the masked individual in Exhibit 14. As in Exhibit 14, any potential prejudice from the cash was not "so inflammatory" as to substantially

outweigh the video's probative value. *See Huyck*, 849 F.3d at 440 (quotation omitted).

Wright also contends that Exhibit 21 was inadmissible under Rule 404(b). This argument fails, however, because the video depicted a gun resembling the one seized by the police. "Possession of a firearm is intrinsic to all of [Wright's] charges," *Brooks*, 715 F.3d at 1077, and the video "is admissible as an integral part of the immediate context of the crime charged," *Jackson*, 913 F.3d at 792 (quotations omitted). It qualified as intrinsic evidence tending to prove the actual commission of the charged offense, not merely a propensity to do so.

#### 4. *Exhibits 29–32*

Finally, Wright argues that the district court erred in admitting a series of Facebook conversations between Wright and various individuals between October 18, 2017, and October 23, 2017. He argues that Exhibits 29–32 were irrelevant and contained inadmissible hearsay. To the contrary, these were relevant to show that Wright associated with Rupp around the time of the carjacking and robbery. Exhibit 29, for example, depicts a conversation in which Wright invites someone to "Gage crib."[4] Government's Trial Ex. 29, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 185-34. And in Exhibits 30–32, Wright mentions that he is, or has been, with Rupp. Wright's association with Rupp around the date of the incident was relevant—both because Rupp was his co-defendant in the robbery and because JB's stolen phone was traced to an address next to Rupp's girlfriend's home the morning after the carjacking. These exhibits did not contain hearsay because the other parties' responses were not introduced for their truth but to provide context for Wright's statements. *See Manning*, 738 F.3d at 943.

---

[4]Rupp's first name is Gage. The investigating officer explained that "crib" means "house." Trial Tr., Vol. 2, at 236:7–9.

For these reasons, we conclude that the district court did not abuse its discretion in admitting the challenged exhibits.

## B. *Jury Instructions*

We review jury instructions for an abuse of discretion. *United States v. Petroske*, 928 F.3d 767, 772 (8th Cir. 2019). "In conducting such review, this court must determine whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Id.* (quotation omitted). "A conviction will not be reversed due to allegedly erroneous jury instructions unless, viewed in their entirety, the instructions fail to correctly state the law." *United States v. Paul*, 217 F.3d 989, 997 (8th Cir. 2000). "Further, jury instructions are evaluated in the context of the entire charge and a jury is presumed to follow all instructions." *Id.*

Wright challenges jury instruction 5, in which the district court instructed the jury on the "intent" element of carjacking. The carjacking statute, 18 U.S.C. § 2119, prohibits taking a motor vehicle "with the intent to cause death or serious bodily harm." The Supreme Court has explained this element as follows:

> The intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car).

*Holloway v. United States*, 526 U.S. 1, 12 (1999); *see also United States v. Wright*, 246 F.3d 1123, 1127 (8th Cir. 2001).

The district court's instruction tracked the Supreme Court's language almost verbatim. Therefore, it properly stated the law as articulated by both the Supreme Court and this circuit. Wright acknowledges that the district court's instruction was based on current precedent but contends that *Holloway* was decided incorrectly. Wright's disagreement with the law does not render the instruction incorrect or provide a basis for a new trial.

Wright also challenges jury instructions 6 and 8, in which the district court instructed the jury that the phrase "carried a firearm" in 18 U.S.C. § 924(c) could include "knowingly transport[ing] a firearm in the passenger compartment of a car." Jury Instrs. at 10, 16, *United States v. Wright*, No. 1:18-cr-00015-LTS-MAR-1 (N.D. Iowa 2019), ECF No. 181-1. He argues that the definition of "carry" should not include transportation of a firearm in a car. Wright is incorrect, however, because these instructions properly stated the law.

The Supreme Court has held that "the 'generally accepted contemporary meaning' of the word 'carry' includes the carrying of a firearm in a vehicle." *Muscarello v. United States*, 524 U.S. 125, 139 (1998) (affirming convictions under § 924(c) in two drug trafficking cases where officers found guns in petitioners' trunk or glove compartment). Before *Muscarello*, we held that transporting a firearm in a vehicle meets the definition of "carry[ing] a firearm" within the meaning of § 924(c): "[W]hen a motor vehicle is used, 'carrying a weapon' takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle." *United States v. Freisinger*, 937 F.2d 383, 387 (8th Cir. 1991) (quotation omitted), *overruling on other grounds recognized by United States v. Beaman*, 361 F.3d 1061, 1064 (8th Cir. 2004)).

Furthermore, the district court's instructions were consistent with the Eighth Circuit Model Jury Instructions for § 924(c). The Notes on Use state that "[w]here

'carry' is charged in the indictment, it should be noted, 'carrying' does not require that the defendant had the weapon on his person. 'Carries,' within the meaning of [§] 924(c)(1), *includes carrying a weapon in a vehicle*." Model Crim. Jury Instr. 8th Cir. 6.18.924C n.3 (2020) (emphasis added) (citations omitted).

Wright argues in the alternative that jury instructions 6 and 8 were confusing. He maintains that the jury might have believed that in order to find Wright guilty of § 924(c), all it needed to find was that he transported the firearm in the car—without any connection to the robbery itself. We are not persuaded by this theory, however, because the district court instructed the jury that the firearm had to be carried "in relation to the commission of" the underlying robbery and explained that this meant the firearm had to have "some purpose or effect with respect to the robbery crime." Jury Instrs. at 15, 16.

## C. *Sufficiency of the Evidence*

A district court may enter a judgment of acquittal after a jury verdict only if the "evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "We review sufficiency of the evidence in a criminal case de novo, viewing the evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Parsons*, 946 F.3d 1011, 1013–14 (8th Cir. 2020) (emphasis omitted) (quotation omitted). This standard "is very strict, and the jury's verdict is not to be lightly overturned." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). "Reversal is warranted only when no reasonable jury could find all the elements beyond a reasonable doubt." *Parsons*, 946 F.3d at 1014 (cleaned up). We address the challenged counts in turn.

1. *Counts 1 and 2*

Wright contends that JB's identification of him as the carjacker was unreliable and that without her identification, no reasonable jury could have convicted him of carjacking or the related firearm count. He argues that several factors cut against the reliability of JB's identification testimony, such as (1) difficulty seeing her assailant because his face was partially covered by a mask, it was nighttime, and the entire interaction lasted only 20 seconds; (2) her distracted attention, caused by having a gun pointed at her while her possessions were stolen; and (3) the possibility that she was influenced by seeing Wright on "MobilePatrol" and her mother's statement that Wright was involved with the robbery.

The district court correctly concluded that these are all factors the jury could have considered when reaching its verdict. "[W]e will not weigh evidence or witness credibility[] because those jury determinations are 'virtually unreviewable on appeal.'" *United States v. Hollingshed*, 940 F.3d 410, 417 (8th Cir. 2019) (quoting *United States v. Alexander*, 714 F.3d 1085, 1090 (8th Cir. 2013)). Because "[t]he jury is the final arbiter of the witnesses' credibility, . . . we will not disturb that assessment." *Hayes*, 391 F.3d at 961.

Furthermore, the jury's verdict was not based solely on JB's identification. Other evidence also linked Wright to the carjacking: (1) Ford testified that Wright directed him to JB's stolen car and referred to it as his "sister's car," Trial Tr., Vol. 2, at 143:9; (2) JB said the carjacker used a black handgun, police seized a black handgun from the van after the robbery, and Ford testified that the gun belonged to Wright; (3) Facebook images showed Wright with a black handgun resembling the one seized by police; (4) JB described the carjacker as wearing a black mask and camouflage clothing, and Facebook photos showed Wright in a black mask and camouflage clothing; and (5) JB's stolen phone was traced to an address two doors down from the home of Rupp's girlfriend the morning after the carjacking—the same

day that Ford picked up Wright and Rupp from that location. In addition, although both Wright and Rupp were linked to JB's stolen car through their involvement in the robbery, Rupp is white and therefore did not match JB's description of a black male.

Viewing this evidence in the light most favorable to the government and accepting all reasonable inferences that support the verdict, we conclude that there was sufficient evidence for a reasonable jury to convict Wright of carjacking and carrying a firearm during and in relation to the carjacking.

## 2. *Count 7*

Wright also challenges the sufficiency of the evidence for his § 924(c) conviction related to the Sprint store robbery, but his argument fails on several grounds. First, he again asks us to reassess the credibility of a trial witness, arguing that Ford's testimony—that Wright had a gun in the van, that Rupp commented how "sweet" it was that they did not have to use it, Trial Tr., Vol. 2, at 150:8, and that Wright threw the gun towards the front of the van—was false. Wright's credibility argument is unconvincing and we decline to take on the jury's role. *See Hollingshed*, 940 F.3d at 417.

Second, other evidence corroborated Ford's testimony. Police found a black Smith & Wesson .40-caliber handgun in the van after the robbery. Facebook photos showed Wright with a black Smith & Wesson .40-caliber handgun, identical to the one found in the van, and a Facebook conversation revealed that Wright attempted to trade that gun for a Glock pistol one month before the robbery. Additionally, Wright communicated on Facebook with El-Amin, the registered owner of the Smith & Wesson handgun, who said to Wright, "Let me know before you do anything wit that b**ch." Government's Trial Ex. 16, at 2. Regardless of Ford's testimony, there was sufficient evidence for a reasonable jury to conclude that Wright possessed the handgun from the van.

Third, Wright relies on the Sprint employee's testimony and the store's security footage to argue that he did not display a gun during the robbery. This is irrelevant, however, because Wright did not have to display, or even carry, a gun inside the store to be found guilty of § 924(c). As noted above, the district court properly instructed the jury that the term "carried a firearm," as used in § 924(c), "means that, during the commission of the crime, the defendant had a firearm on or about his person or knowingly transported a firearm in the passenger compartment of a car." Jury Instrs. at 16. Therefore, the jury needed only to conclude that Wright knowingly had a gun on him or in the van during the robbery, and there was ample evidence to support this conclusion.

### 3. *Count 3*

Finally, Wright contends that there was insufficient evidence to convict him of possessing a firearm as a prohibited person under § 922(g). His only argument is that it was "Ford who actually committed the carjacking and possessed the firearm on the evening of the robbery and as such, [] Wright could not be found guilty of possessing that firearm." Appellant's Br. at 20. We disagree.

"To convict an individual of being a felon in possession of a firearm, the government must prove the individual (1) was previously convicted of a felony and (2) knowingly possessed a firearm, and (3) the firearm was transported in interstate commerce." *United States v. Johnson*, 745 F.3d 866, 869 (8th Cir. 2014).[5] Wright stipulated to being a prohibited person under § 922(g) and that the firearm was

---

[5]Since Wright's conviction, the Supreme Court has held that the government must prove an additional element: "[I]n a prosecution under 18 U.S.C. § 922(g) . . . , the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). Wright does not challenge his conviction on this ground, however.

transported in interstate commerce. Therefore, the government only had to prove the second element, and we have already found sufficient evidence for a reasonable jury to conclude that Wright knowingly possessed a firearm and carried it during or in relation to the robbery of the Sprint store.

Accordingly, the district court did not err in denying Wright's motion for a judgment of acquittal.

### D. *Sentencing Enhancement under U.S.S.G. § 2K2.1(b)(1)*

Wright argues that there was insufficient evidence to support a two-level enhancement under § 2K2.1(b)(1). We review factual findings with regards to a sentencing enhancement for clear error. *United States v. Sesay*, 937 F.3d 1146, 1153 (8th Cir. 2019). Section 2K2.1(b)(1) applies a sentencing enhancement for a firearm-possession conviction "[i]f the offense involved three or more firearms." The statute then prescribes various levels of increase based on the number of firearms, including a two-level increase if the offense involved three to seven firearms. U.S.S.G. § 2K2.1(b)(1)(A).

Wright acknowledges that "several photos show[] him holding a firearm on his Facebook page" but argues that there is "no proof that those [photos] are not [of] the same firearm." Appellant's Br. at 21. The record flatly contradicts this assertion. At trial, the government presented photos of Wright with (1) one black-and-silver handgun, and (2) one black Smith & Wesson .40-caliber handgun. The latter appears to be the same weapon found in Ford's van after the robbery. At sentencing, the government presented another photo of Wright holding one black handgun with three more guns at his feet—two black, and one black-and-silver. The district court did not clearly err in concluding that he possessed between three and seven firearms.

E. *Sentencing Enhancement under U.S.S.G. § 2B3.1(b)(5)*

Wright argues that the district court erred in applying the carjacking offense characteristic under § 2B3.1(b)(5). He contends that the carjacking offense was already factored into his base offense level and that applying the carjacking offense characteristic constituted impermissible double counting. We review de novo the district court's application of the Sentencing Guidelines and the question of double counting. *United States v. Canamore*, 916 F.3d 718, 720 (8th Cir. 2019) (per curiam). "A court impermissibly double counts when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Mays*, 967 F.3d 748, 753 (8th Cir. 2020) (cleaned up). "Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Hawkins*, 181 F.3d 911, 912 (8th Cir. 1999) (quotation omitted). But "double counting is permissible if the Sentencing Commission so intended and each guideline section furthers an independent purpose of sentencing." *Canamore*, 916 F.3d at 720 (quotation omitted).

Section 2B3.1 is the relevant sentencing guideline for a carjacking conviction under 18 U.S.C. § 2119(1). It covers sentencing guidelines for robbery, applying a base offense level of 20 for that crime. Under § 2B3.1(b)(5), the statute prescribes a two-level increase "[i]f the offense involved carjacking." Because § 2B3.1 and the corresponding base level of 20 apply to the crime of robbery generally—not carjacking—that section does not fully account for Wright's conduct. Carjacking is a specific type of robbery for which the Guidelines add two levels, resulting in an offense level of 22.

The Eleventh Circuit addressed this issue in *United States v. Naves*, concluding that adding two levels under § 2B3.1(b)(5) did not constitute impermissible double counting. 252 F.3d 1166, 1169 (11th Cir. 2001). The court explained:

Clearly the Sentencing Commission could have added to the Manual a separate section for carjacking with a base offense level of 22. It elected not to do so. Instead the Commission utilized the robbery section, § 2B3.1, which established a base offense level of 20 for the culpability incident to an offense involving robbery in general. The Commission then provided a two level increase to reflect the heightened seriousness of a robbery involving the violation of § 2119, the carjacking statute. In doing so, the Sentencing Commission acted within its statutory authority.

*Id.* The Fourth Circuit came to the same conclusion in *United States v. Cunningham*, 221 F. App'x 258 (4th Cir. 2007) (per curiam). We are persuaded by the reasoning of our sister circuits. Accordingly, we conclude that the district court did not err in applying the carjacking offense characteristic when it calculated Wright's sentence.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's decision.

_____