# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2457
_____

United States of America

*Plaintiff - Appellee*

v.

Doyle D. Smith

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: February 12, 2016
Filed: July 29, 2016
_____

Before LOKEN, ARNOLD, and BENTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Stripped to its essence, this appeal raises the question whether denial of a criminal defendant's timely request to represent himself at trial because he had not complied with prescribed pretrial procedures and might be planning to make arguments the district court would consider "improper" violated his Sixth Amendment right of self-representation. A jury found Doyle D. Smith guilty of corruptly obstructing administration of the internal revenue laws, willfully

subscribing to false federal tax returns, and mailing a false negotiable instrument to a state agency with intent to commit fraud in violation of 26 U.S.C. §§ 7206(1) and 7212(a) and 18 U.S.C. § 514. Smith appeals, arguing the district court violated his right to represent himself at trial. We agree and therefore reverse.

## I. Background.

Smith was arraigned on July 3, 2014, and released on a $50,000 bond secured by his home. On August 11, he filed a *pro se* pleading the district court construed as a motion to withdraw appointed counsel. He also filed "notices" the clerk's office returned without filing because they were not in compliance with federal or local rules. At the August 8 hearing on the motion to withdraw, after thoroughly explaining the dangers and difficulties of self-representation, the magistrate judge determined that Smith "knowingly and voluntarily waived [his] right to a lawyer," granted Smith's request to represent himself, and appointed Assistant Federal Public Defender Jack Schisler to serve as Smith's standby counsel. Neither the district court nor the government has ever challenged the determination that Smith knowingly, voluntarily, and unequivocally waived his right to counsel because he wanted to represent himself, nor has Smith's competence to make that decision been questioned. Cf. Indiana v. Edwards, 554 U.S. 164 (2008); United States v. Mosley, 607 F.3d 555, 557 (8th Cir. 2010).

At the conclusion of the August 8 hearing, the magistrate judge reviewed three "notices" Smith had sent to the clerk's office and to the United States Attorney's office.[1] Referring to the third notice, the magistrate judge stated:

---

[1]The notices are not in the district court record. Their substance, as summarized by the magistrate judge at the August 8 hearing, resembled arguments made by other defendants in criminal tax cases who have unsuccessfully challenged the validity of the federal Internal Revenue laws. See, e.g., United States v. Alexio, Cr. Nos. 13-01017 and 13-01018, 2016 WL 1559135, at *4 (D. Haw. Apr. 18, 2016).

> This appears frivolous to me, Mr. Smith. You could even be sanctioned for submitting these pleadings to the Court and trying to waste the Court's time. . . . If you submit anything like this to the Court that is not a proper motion, that is not properly supported by legal authorities, that is frivolous, not only will Mr. Schisler be reappointed, but you may be sanctioned. Your bond might be revoked.

Smith stated that he understood and "won't be submitting any more documents."

The magistrate judge granted the government's motion to continue trial at a September 4 hearing. Smith appeared and did not object. The court entered a text-only order setting the pretrial conference for October 15 at 9:00 a.m., with trial to start October 20. The court's records reflect that this order was mailed to Smith. On September 23, the government filed a superseding indictment. Smith attended his third arraignment on September 29 and entered a plea of not guilty.

On October 15, the district court and counsel appeared in open court for the 9:00 a.m. pretrial conference. When Smith did not appear, a warrant was issued for his arrest. Smith, who had been at work, voluntarily came to the courthouse at about 11:30 a.m. The magistrate judge held a bond revocation hearing at 11:46 a.m., attended by Smith, standby counsel Schisler, and Tax Division attorneys from Dallas and Washington, D.C., who had replaced local Assistant U.S. Attorneys as government counsel. Smith did not recall receiving the September 4 order in the mail but admitted it could have been overlooked. He recalled being advised of a pretrial conference on October 15 but not a specific time or room. He said that he "was waiting for a notice that I normally get in the mail like the day before the hearing." "Had I gotten it, I would have . . . been here this morning at 9:00 o'clock sharp." He apologized to the court. Schisler noted that Smith had never missed an appearance before, and appeared just 2.5 hours late "under his own steam." Government counsel complained that, in accordance with the pretrial order, the government had sent Smith a copy of its proposed jury instructions and verdict form, a statement of the case, and

a proposed plea agreement; Smith had not responded and had filed a frivolous trespass action in state court against the U.S. Attorney.

After questioning Smith at length, the magistrate judge revoked Smith's bond and ordered him held in custody for willfully failing to appear for the 9:00 pretrial conference and for "being dishonest with the court as to why you did not appear." Turning to Smith's *pro se* status, the magistrate judge revoked Smith's right to represent himself and reappointed Schisler as defense counsel because Smith willfully disobeyed the scheduling order; willfully disobeyed the court's pretrial order that the parties "confer regarding proposed instructions" and submit agreed instructions by October 13; failed to submit a statement of the case; and disobeyed the court's directive not to file frivolous pleadings by suing the U.S. Attorney in state court, which was an "obstructionist tactic to interfere" with these proceedings. Schisler asked the court to reconsider, arguing that Smith had apologized for not timely appearing at the pretrial conference, properly appeared for all other proceedings, complied with the conditions of his bond, and stopped filing frivolous pleadings in this action, which was all the court had ordered. Government counsel urged that Smith be detained, again complaining that he had not responded to the proposed plea agreement and willfully found a way around the court's order not to file frivolous pleadings by filing the state court lawsuit. The magistrate judge agreed and declined to reconsider either ruling.

Counsel Schisler filed a motion to revoke the detention order and reinstate Smith's *pro se* status. At the start of the October 17 hearing on that motion, Schisler advised the district judge that Smith "is content to allow me to continue to represent him" and urged the court to revoke the detention order. The court stated it would be inclined to grant that motion if Smith "will consent to allowing you to represent him on the record." Smith stated that he consented to Schisler's representation. The district court then ratified Schisler's appointment "with Mr. Smith's consent," reinstated Smith's release bond with the additional condition that Smith have no

further direct communication with the government, and granted Schisler's oral request for a continuance of the imminent trial to February 9, 2015.

On January 21, 2015, nineteen days before trial, Schisler filed a motion to withdraw so that Smith could proceed *pro se*. The district judge denied the motion without a hearing, stating that it was "in the best interest of justice that Defendant be represented by counsel" because of his frivolous filings -- "a stream of letters to the United States Attorney's office" -- and his "history of obstructionist conduct as evidenced by his willful failure to attend his pretrial hearing." The court ruled that Smith had "not identified any change in circumstances that would warrant reinstating his *pro se* status -- especially at this late date."

On January 26, Schisler filed a second motion to withdraw. The court held a hearing on January 28. Schisler advised the court that Smith was ready to try the case *pro se* on February 9, as they had been preparing together for three months. Schisler was prepared to serve as stand-by counsel at the trial, providing Smith guidance and ready to take over without a continuance should the court revoke his *pro se* status. Schisler argued it was "premature to assume that [Smith's] going to pull some kind of shenanigans until such time as he might do that." Schisler further noted that Smith had always desired to represent himself and had consented to appointed counsel at the October 17 hearing for the legitimate reason that, if his motion to revoke the detention order was denied, "he would be representing himself from jail."

The district court told Schisler, "my suspicion is that Mr. Smith is wanting you to advance arguments to the Court which are not relevant and that as an officer of the court you're not willing to make." If that was the case, the court said, "I'm not going to let Mr. Smith represent himself just so he can . . . make nonrelevant and improper arguments." When questioned by the court, Smith said that he wanted to represent himself because of his personal knowledge of the case, not because he wanted to

advance improper arguments, and that he would not contend the court did not have jurisdiction over him (a common claim of those accused of criminal tax offenses).

When asked to comment, government counsel informed the court that, in October, the reason Smith's written rejection of the government's proposed plea agreement took so long to reach government counsel in Dallas was that Smith addressed his letter with the prosecutor's initials rather than his full name. The court commented, "Mr. Smith, this is exactly the type of obstructionist conduct that I'm talking about. You . . . use every opportunity to gum up the gears." Schisler accurately noted that, if Smith had not responded to the government's proposal at all, it "would be crystal clear that he didn't accept the plea offer."

On February 4, the district court issued a Memorandum Opinion and Order denying Schisler's Second Motion To Withdraw because: (1) Smith waived his right to self-representation at the October 17 hearing and his attempt to "flip flop" was an untimely "manipulation of the trial process." (2) By this motion, Smith effectively sought review of the magistrate judge's order revoking his *pro se* status; after *de novo* review, "the Court agrees with [the magistrate judge] and finds that Mr. Smith should not represent himself." (3) "The Court has a legitimate interest . . . in understanding whether a defendant's request is a genuine and sincere desire to dispense with counsel, rather than a mechanism to advance an improper argument. . . . Despite considerable effort at the January 28 hearing to determine Mr. Smith's motives, the Court is not persuaded that his intentions are genuine and sincere." We conclude that these reasons, individually and collectively, were not an appropriate or adequate basis to deny Smith his constitutional right to represent himself at trial.

## II. Discussion.

In Faretta v. California, the Supreme Court held that a criminal defendant who "clearly and unequivocally declared to the trial judge that he wanted to represent

himself and did not want counsel," after being adequately warned "of the dangers and disadvantages of self-representation," has a constitutional right "to conduct his own defense." 422 U.S. 806, 835-36 (1975). However, the Court explained, the right to self-representation is not absolute:

> We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. *Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.*

Id. at 834 n.46 (emphasis added), citing Illinois v. Allen, 397 U.S. 337. In Allen, the Court upheld rulings during a criminal trial that revoked the defendant's right to represent himself and then removed him from the courtroom for misconduct that threatened the trial proceedings. The Court explained that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." 397 U.S. at 343, 347.

In this case, we do not review revocation of a defendant's right of self-representation for misconduct that threatened the criminal proceedings. Smith was represented by counsel when Schisler filed the two motions to withdraw in January 2015. Thus, the district court ruling on appeal is the denial of Smith's pretrial request to invoke his constitutional right to represent himself at trial, a ruling we review *de novo*. See United States v. Mahasin, 442 F.3d 687, 691 (8th Cir. 2006).

1. The district court erred in ruling that Smith's pretrial request was untimely. "[A] motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay." Fritz v. Spalding, 682 F.2d 782, 784 (9th Cir. 1982); see United States v. Washington, 596 F.3d 926, 940 (8th Cir. 2010)

(upholding discretionary grant of self-representation after jury selected); United States v. Patterson, 140 F.3d 767, 775 (8th Cir.) (upholding grant of motion made on first day of trial), cert. denied, 525 U.S. 907 (1998). A "flip flop," as the district court mis-characterized Smith's attempt to resume his *pro se* status, is not, standing alone, an untimely "manipulation of the trial process."

Here, Smith's renewed request was not made for the purpose of delaying the trial, as were the last-minute requests in United States v. Edelmann, 458 F.3d 791, 809 (8th Cir. 2006), and United States v. Mackovich, 209 F.3d 1227, 1237-38 (10th Cir.), cert. denied, 531 U.S. 905 (2000). Schisler advised the court that Smith was prepared to try the case as scheduled on February 9, with Schisler serving as stand-by counsel, ready to take over if Smith engaged in "in serious obstructionist misconduct" at the pretrial conference or at trial. Nor had Smith previously attempted to delay his trial. Prior trial delays resulted from the government's motion for continuance, and from the magistrate judge's revocation of his *pro se* status, which delayed the trial by months, since Smith was ready to proceed on the scheduled date, while Schisler needed more time to prepare.

2. The district court erred in treating Schisler's January 2015 motions to withdraw as effectively seeking review of the magistrate judge's prior order revoking Smith's *pro se* status. Whenever a defendant invokes his constitutional right to self-representation, the request must be granted or denied based on circumstances existing at that time. The magistrate judge's prior ruling of course provided important background to the pending motions. But it was "water over the dam," and thus is not before us on appeal. (If it was, we would reverse the decision to revoke.)

3. The district court erred in basing the decision on its conclusion that Smith's request was "a mechanism to advance an improper argument" that attorney Schisler was unwilling to make, rather than "a genuine and sincere desire to dispense with counsel." The constitutional right at issue is the defendant's right to conduct his own

defense.  McKaskle v. Wiggins, 465 U.S. 168, 174 (1984).  Therefore, "[t]he *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial."  Id.  Defendants have a right to present "unorthodox defenses and argue their theories to the bitter end."  United States v. Johnson, 610 F.3d 1138, 1147 (9th Cir. 2010).  This may require the trial court to tolerate "numerous nonsensical pleadings," even "occasionally wacky" behavior, so long as the defendant is not disruptive or defiant.  Id. at 1144.  Repeated, frivolous challenges to the court's jurisdiction, to the government's authority to prosecute, or to the validity of the federal laws defendant is charged with violating, are not disruptive or defiant in this sense -- unless they threaten to forestall pretrial or trial proceedings.  The proper judicial response is repeated denials and lesser sanctions if necessary.  Ultimately, frivolous behavior at trial is likely to result in an adverse jury reaction, but defendants have "the right to represent themselves and go down in flames if they wish[], a right the district court [is] required to respect."  United States v. Reed, 668 F.3d 978, 986 (8th Cir. 2012); see Faretta, 422 U.S. at 834; cf. United States v. Ward, 598 F.3d 1054, 1059 (8th Cir. 2010) ("A defendant's constitutional right to be present at his trial includes the right to be an irritating fool in front of a jury of his peers.").

4.  The district court erred in concluding that Smith's failure to respond to the government's proposed jury instructions and plea offer, to submit a statement of the case, and to "confer" with government counsel about these issues were violations of the court's pretrial order that amounted to the "serious obstructionist misconduct" referred to in Faretta.  The right of self-representation is the defendant's right to conduct his own defense at trial.  In exercising that right, the defendant may be required to "follow all the 'ground rules' of trial procedure."  Faretta, 422 U.S. at 836, citing id. at 808 n.2.  A defendant granted *pro se* status may also be required to comply with pretrial orders, but "[p]retrial activity is relevant [to continued *pro se* status] only if it affords a strong indication that the defendant[] will disrupt the

proceedings in the courtroom." United States v. Plewitt, 874 F.2d 669, 674 (9th Cir. 1989) (construing Faretta footnote 46).

The definition of seriously obstructive conduct must not be unduly expanded in evaluating a *pro se* defendant's conduct during pretrial criminal proceedings. Indeed, the serious and obstructionist misconduct "ground for terminating self-representation is unavailable [when the defendant] was not even allowed to begin to represent himself, and . . . was respectful and compliant and did not provide a basis to conclude a trial could not have gone forward." Edwards, 554 U.S. at 185-86 (Scalia, J., dissenting). Thus, the "constitutional right of self-representation may not be abrogated because [the defendant was] uncooperative with the Government in utilizing discovery opportunities or in making vague and poorly formulated motions." Plewitt, 874 F.2d at 673. Nor does failure to respond to a proposed plea agreement, to submit a statement of the case, or to confer with government counsel warrant denial of the right of self-representation at trial. Of course, a failure to comply with a pretrial order requiring defendant to respond to proposed jury instructions may be deemed a failure to object. But to deny a defendant's timely pretrial request to represent himself at trial, there must be "serious obstructionist misconduct" during pretrial proceedings and "good cause to believe that [defendant] would continue to disrupt the proceedings if the court permitted him to resume self-representation." Mosley, 607 F.3d at 558-59 (quotation omitted).

The magistrate judge and the district court also placed great emphasis on the fact that Smith failed to appear at a pretrial conference and lied about why he was over two hours late. Clearly, this was an annoying mistake, one that wasted the court's time and may have warranted a lesser sanction, such as revoking Smith's bond or imposing additional bond conditions. But Smith apologized for his mistake, and our review of the hearing transcript reveals that he was polite and articulate, not hostile or disrespectful, in tendering excuses the court found less than credible. No delay resulted, except delay resulting from revocation of *pro se* status. Smith's filing

-10-

of a frivolous state court action against the U.S. Attorney was another annoying, improper action that had no impact on the timely completion of his criminal case.

The record in this case shows the total absence of the kind of serious obstructionist misconduct that has led us to deny or revoke requests for self-representation in prior cases. In Edelmann, the defendant "sought and received four continuances" and waited to submit her request to proceed *pro se* until four or five days before the jury trial was to begin, a request the district court found was intended to disrupt and delay the proceedings. 458 F.3d at 809. In United States v. Mabie, 663 F.3d 322 (8th Cir. 2011), cert. denied, 133 S. Ct. 107 (2012), the defendant "repeatedly interrupted the court and prosecutor" at hearings and "repeatedly disrupted" pretrial proceedings. Even more seriously, he "dispatched a series of letters in which he openly boasted of using the court's subpoena power for the purpose of harassing proposed witnesses and their families" and sent a letter to his attorney saying, "IS THE ONLY WAY TO GET YOU OFF THIS CASE IS TO PHYSICALLY ASSAULT YOU IN THE COURTROOM?" Id. at 326, 329. Unlike Mabie's threats and disruptions, Smith's early *pro se* submissions, and his frivolous state court lawsuit, did not delay trial or contain threats. Those actions, though frivolous and annoying, were not serious obstructionist misconduct indicating Smith would disrupt the trial.

In Mosley, the defendant was "disruptive and unresponsive" at his competency hearing and pretrial conference, refusing to answer questions and making irrational statements that persuaded the district court that he was not competent to defend himself at trial. 607 F.3d at 557. Defendant's complete refusal to participate and "obstreperous conduct . . . interfered with pretrial proceedings and delayed the trial," giving "good cause to believe that Mosley would continue to disrupt the proceedings if the court permitted him to resume self-representation." Id. at 559; see United States v. Brunson, 482 F. App'x 811, 818 (4th Cir.) ("it was impossible for the district court to conduct any type of meaningful dialogue" when the defendants would not

admit they were the defendants), <u>cert. denied</u>, 133 S. Ct. 462 (2012); <u>United States v. Brock</u>, 159 F.3d 1077, 1079-81 (7th Cir. 1998) (defendant's "steadfast refusal" to cooperate included refusing to declare whether he wanted counsel); <u>accord</u> <u>United States v. Krug</u>, No. 15-1350, 2016 WL 2342982, at *5 (8th Cir. May 4, 2016).

The district court erred in refusing Smith's timely renewed pretrial request to represent himself at trial, with standby counsel ready to step in should *pro se* status need to be terminated. "An impermissible denial of self-representation cannot be harmless." <u>United States v. Long</u>, 597 F.3d 720, 724 (5th Cir.), <u>cert. denied</u>, 561 U.S. 1034 (2010); <u>see</u> <u>McKaskle</u>, 465 U.S. at 177 n.8. Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____