# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-3166
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Atkins, also known as Forever

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: September 23, 2022
Filed: November 2, 2022
_____

Before GRUENDER, SHEPHERD, and ERICKSON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury found Anthony Atkins guilty of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a). Atkins raises several issues on appeal. First, he argues that the district court violated his Sixth Amendment right to self-representation by denying his requests to proceed *pro se*. Second, he contends that the evidence at trial was insufficient to sustain his conviction. Third, he argues that the district court admitted unfairly prejudicial evidence. Finally, he submits that two of the special

conditions of supervised release imposed by the district court are impermissibly vague and overbroad. We affirm the conviction but remand for clarification of the two special conditions.

## I.

In April 2018, L.D.'s parents reported to the police that their seventeen-year-old daughter had run away from home. In June 2018, in an effort to locate L.D., Detective Raymond Koonce, an undercover police officer, responded to an online advertisement titled "Exotic white girl, text me, (501) 902-4029." The advertisement was published on CityXGuide.com, a website which has since been shut down by the federal government. Detective Koonce exchanged text messages with the listed phone number and arranged to pay $180 for a thirty-minute date with the advertised female. When Detective Koonce arrived at an agreed-upon location, a girl, later identified as L.D., entered his car. L.D. indicated that she would engage in sex acts with Detective Koonce and discussed prices. The two then drove to a nearby gas station to purchase a condom, where L.D. was promptly arrested. After L.D.'s arrest, Detective Koonce continued to receive phone calls and text messages from the listed phone number, including one that asked "is my daughter [with] you." Investigators eventually determined that the phone number was associated with Anthony Atkins. In September 2018, Atkins was indicted for sex trafficking of a minor in violation of 18 U.S.C. § 1591(a). He pleaded not guilty.

At a pretrial hearing, Atkins requested to represent himself. Atkins repeatedly insisted that he "waived [his] appearance" and told the court, "As pro pro se [sic] I do not go to trial at all as a sovereign citizen." When the district court asked Atkins whether he understood that he was charged with a crime and facing trial, he answered, "I know with them giving me a charge and me being a citizen of the state, the charge I can charge it to my account" and stated that "[t]he trial is not going to happen." The district court then engaged in a colloquy under *Faretta v. California*, 422 U.S. 806 (1975), to evaluate whether Atkins's request was made "knowingly, voluntarily, and intelligently." During a lengthy exchange in which he repeatedly

spoke out of turn and had to be told to sit down, Atkins indicated that he was not familiar with the Federal Rules of Evidence or with other important aspects of criminal proceedings. The district court nonetheless allowed Atkins to proceed *pro se* with standby counsel available. Later in the hearing, however, the district court began to doubt that Atkins's request was sufficiently unequivocal, and the court eventually concluded that Atkins was "simply trying to obstruct the proceedings" and thus "waiving his right to represent himself."

At a subsequent pretrial conference, Atkins made a series of outbursts in which he accused the court of "not functioning within an appointed manner of righteousness" and declared that he "hold[s] grand sheikh status" and did not "have to discuss a charge." He stated that his attorneys "won't be representing me as counsel" and continued to insist that he was "pro pro se."

Later, the district court held another pretrial conference and again considered Atkins's request to represent himself. After multiple attempts to complete a *Faretta* colloquy, the court explained that it would "give [Atkins] one more chance to make an unequivocal request" but that "[i]f [Atkins] sa[id] something other than yes," the court would deny his request. When asked for his final answer, Atkins told the court, "Yes, I'm pro par se [sic]. I will not be going to trial as a grand sheikh." As before, the district court determined that Atkins's request was "essentially an attempt to obstruct the proceedings," which "in and of itself [was] a reason to deny [it]." The case proceeded to trial with Atkins represented by counsel.

At trial, Atkins was repeatedly disruptive, especially during the testimony of L.D. He interrupted her more than ten times, including by "objecting" to her testimony, accusing her of lying, and announcing his "jurisdiction as Allah, grand sheikh." More than once, the court had to ask the jury to exit the courtroom so that Atkins could be admonished.

L.D. testified that Atkins first reached out to her in April 2018 through Instagram when he requested her phone number and asked, "how often do you travel

sexiface?" Shortly after the two began text messaging one another, L.D. told Atkins that she was seventeen years old and sent him a photograph of her birth certificate so that he could verify her age. Atkins and L.D. also had in-person conversations about her age. At one point, he told her that her age was "a liability" to him that could "get him in trouble." On another occasion, he instructed her not to wear clothing that indicated the name of her school "because he didn't want anybody knowing that [she] was in high school." By early June 2018, L.D. had moved in with Atkins. Atkins allowed her to live with him on the condition that she "work for him" by selling herself for sex through online advertisements that he published.

Over Atkins's objection, the district court allowed the Government to introduce into evidence two short videos recovered from Atkins's cellphone. Both videos were recorded by Atkins in the three months preceding L.D.'s arrest. The first depicted Atkins speaking to the camera about "n-----s' ho's stables" and remarking that he would "knock that b---h out of [her] New Balances and put her into these fresh, Giuseppe red-bottom heels."[1] The second depicted Atkins flashing and counting cash while speaking to the camera and stating, among other things, that he is creating "generational wealth," that it is "all up to [the viewer]" if they want to "get this [cash] together," and that "any b---h with me [is] goin' to the top." The district court also admitted, over Atkins's objection, a compilation of cellphone screenshots indicating that Atkins had shared the second video through Instagram. The district court admitted each of these three exhibits under Federal Rule of Evidence 404(b) as evidence of Atkins's motive, intent, or plan to engage in sex trafficking.

The jury found Atkins guilty of sex trafficking of a minor. The district court sentenced Atkins to the statutory minimum of 120 months' imprisonment with an additional 15 years' supervised release. The court imposed multiple special conditions of supervised release, including one that prohibited Atkins from

---

[1]In his testimony, Federal Bureau of Investigation Special Agent Aaron Hurst defined a "stable" as "a group of girls owned or worked by a particular pimp" and described "Giuseppe red-bottom heels" as "expensive luxury shoes."

"view[ing] or possess[ing] any visual depiction . . . of sexually explicit content . . . or any other material that would compromise [his] sex specific treatment." Another special condition prohibited Atkins from "enter[ing] adult bookstores, strip clubs, or adult-themed entertainment businesses or any establishments where such materials or entertainment is available." Atkins appealed.

## II.

We begin with Atkins's argument that the district court impermissibly denied his request to represent himself at trial. We review *de novo* a district court's denial of a criminal defendant's request to proceed *pro se*. *United States v. Smith*, 830 F.3d 803, 809 (8th Cir. 2016).

The Sixth Amendment grants a criminal defendant the right to represent himself at trial without the assistance of counsel. *Faretta*, 422 U.S. at 819. To invoke the right to self-representation, a defendant must "clearly and unequivocally declare[]" to the trial court that he wishes to proceed *pro se*. *Smith*, 830 F.3d at 808. This right, however, "is not absolute," *United States v. Kelley*, 787 F.3d 915, 917 (8th Cir. 2015), and can be outweighed by "the government's interest in ensuring the integrity and efficiency of the trial," *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 162 (2000). Thus, even if a defendant clearly and unequivocally requests self-representation, a court may deny the request when the defendant "engages in serious and obstructionist misconduct," *see Kelley*, 787 F.3d at 917 (internal quotation marks omitted), or seeks to use the right "as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process," *United States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010) (internal quotation marks omitted). "[S]elf-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46; *cf. Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. . . . [T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.").

Atkins maintains that the district court should have allowed him to proceed *pro se* at trial because he clearly and unequivocally invoked his right to self-representation when he repeatedly stated in his pretrial hearings that he was "pro pro se" and that his lawyers "won't be representing me as counsel." According to Atkins, although his sovereign-citizen beliefs "might be unorthodox," they are not "necessarily the product of a mind incapable of waiving rights knowingly and voluntarily." *See United States v. Preston*, 50 F.4th 681, 685 (8th Cir. 2022). Moreover, Atkins argues, a self-representation request cannot be denied merely because a defendant advances sovereign-citizen arguments that the court considers meritless. *See United States v. Taylor*, 21 F.4th 94, 102 (3d Cir. 2021) ("[C]ourts have repeatedly concluded that 'sovereign citizens' may represent themselves despite their frivolous beliefs about the law."); *see also Smith*, 830 F.3d at 810 ("[Self-representation] may require the trial court to tolerate numerous nonsensical pleadings, even occasionally wacky behavior, so long as the defendant is not disruptive or defiant. Repeated, frivolous challenges to the court's jurisdiction . . . are not disruptive or defiant in this sense—unless they threaten to forestall pretrial or trial proceedings." (citation and internal quotation marks omitted)).

Atkins's arguments miss the point. Even assuming his requests were clear and unequivocal, the district court did not err in denying them because Atkins's pretrial behavior was "serious and obstructionist." *See Kelley*, 787 F.3d at 917.

At multiple hearings, when the district court attempted to carry out a *Faretta* colloquy, Atkins consistently demonstrated his unwillingness to participate in the proceedings by interrupting and arguing with the court, refusing to provide responsive answers, and insisting that "[t]he trial is not going to happen." His conduct was at times "unruly," and, at least once, resulted in his removal from the courtroom. According to the district court, after observing and interacting with Atkins at a hearing for more than six hours, it appeared that his disruptive behavior and refusal to participate in the proceedings was "volitional and tactical or strategic in nature" and "done for effect." Thus, it was Atkins's improper conduct—not the

frivolity of the sovereign-citizen beliefs Atkins proclaimed—that led the district court to conclude that he was "simply trying to obstruct the proceedings" and thereby "waiving his right to represent himself." A court faced with such obstructive conduct does not violate the right to self-representation by denying a defendant's request to proceed *pro se*. *See Mosley*, 607 F.3d at 559 (affirming the denial of a self-representation request where the defendant refused to respond to questions or otherwise participate in pretrial proceedings); *see also United States v. Mabie*, 663 F.3d 322, 329 (8th Cir. 2011) (affirming the revocation of self-representation where the defendant threatened to abuse the court's subpoena power and "repeatedly disrupted the proceedings and was openly hostile, disrespectful to the court, and inattentive" in pretrial hearings).

Further, we disagree with Atkins that the district court's denials were premature. Although a defendant's pretrial conduct will warrant a denial of self-representation "only if it affords a strong indication that the defendant will disrupt the proceedings in the courtroom," *see Smith*, 830 F.3d at 810, Atkins's pretrial conduct undoubtedly rose to this level. When the district court provided Atkins opportunities to request self-representation properly, Atkins chose to divert the proceedings by arguing with the court, propounding jurisprudential and religious theories, and "talk[ing] . . . about everything but []his case." *See Mosley*, 607 F.3d at 559. Atkins's disruptive behavior during his pretrial hearings therefore threatened to forestall the proceedings, *see Smith*, 830 F.3d at 810, and gave the district court "good cause to believe" that Atkins would continue to obstruct if allowed to represent himself at trial, *see Mosley*, 607 F.3d at 559. Indeed, the district court's concerns proved justified: at trial, Atkins continued his obstructionist tactics by interrupting witnesses, flouting rulings, and forcing the court to excuse the jury multiple times. Accordingly, the district court did not err in denying Atkins's requests to represent himself.

We turn next to Atkins's sufficiency-of-the-evidence argument. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Maurstad*, 35 F.4th 1139, 1144 (8th Cir. 2022). We will affirm the verdict unless "no reasonable jury could have found [Atkins] guilty beyond a reasonable doubt." *Id.*

Atkins was charged with sex trafficking of a minor under 18 U.S.C. § 1591(a), which provides, in relevant part:

> Whoever knowingly—
>
> (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . .
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that . . . the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . .

On appeal, Atkins challenges only whether the Government established beyond a reasonable doubt that he knew or recklessly disregarded that L.D. was under the age of eighteen. He contends that the Government failed to meet its burden because the only evidence presented as to his knowledge of L.D.'s age came from L.D. herself. L.D.'s testimony was "implausible," Atkins says, because she discussed text-message conversations between her and Atkins that were never recovered despite a thorough search of Atkins's electronic devices. In addition, Atkins maintains that the evidence was insufficient to show that he recklessly disregarded that L.D. was less than eighteen years old because, at the time he and

L.D. interacted, L.D. "was a few months shy of her 18th birthday, she looked between the ages of 18 and 22, and she was not in school." We are not persuaded.[2]

L.D.'s testimony, by itself, was sufficient evidence from which a reasonable jury could conclude that Atkins knew or recklessly disregarded her age. *See Maurstad*, 35 F.4th at 1144-45; *United States v. Lopez*, 443 F.3d 1026, 1031 (8th Cir. 2006) (explaining that a reviewing court must defer to the jury's determination of witness credibility when considering the sufficiency of the evidence). L.D. testified that she told Atkins in a text message that she was seventeen years old and that she even sent him a photograph of her birth certificate to prove it. Although these text messages were not recovered by the Government, L.D. further testified that she and Atkins had in-person conversations about her age and that Atkins told her that her age was "a liability to him and that it could get him in trouble." She also testified that Atkins told her not to wear a t-shirt with her school's name on it "because he didn't want anybody knowing that [she] was in high school." Accordingly, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that support the verdict, a reasonable jury could have found that Atkins knew or recklessly disregarded that L.D. was less than eighteen years old—regardless of whether L.D. was attending school or "looked" at least eighteen years old to Atkins when they interacted. *See Unites States v. Phea*, 755 F.3d 255, 261 (5th Cir. 2014) ("Facts other than the victim's appearance or behavior may support a finding of reckless disregard of a victim's age, such as

---

[2]The district court instructed the jury that, if the Government established that Atkins recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited L.D., then the Government did not need to prove that Atkins knew or recklessly disregarded that L.D. was under the age of eighteen so long as it proved that Atkins "had a reasonable opportunity to observe L.D." *See* 18 U.S.C. § 1591(c). Atkins argues that the "reasonable opportunity to observe" standard is unconstitutionally vague. His argument, raised for the first time on appeal, is foreclosed by our precedent. *See United States v. Koech*, 992 F.3d 686, 690 (8th Cir. 2021).

information from the victim, or others, or documentation that would cause a reasonable person to question whether the victim was actually eighteen years old.").

## IV.

We now consider Atkins's argument that the district court erred in admitting under Federal Rule of Evidence 404(b) the two cellphone videos recorded in the months prior to L.D.'s arrest and the cellphone screenshots indicating that Atkins shared one of the videos through Instagram. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Wright*, 993 F.3d 1054, 1061 (8th Cir. 2021).

Rule 404(b) permits the admission of evidence of a criminal defendant's "crime, wrong, or act" to prove the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Such evidence must be (1) "relevant to a material issue"; (2) "similar in kind and not overly remote in time to the crime charged"; and (3) "supported by sufficient evidence." *United States v. Contreras*, 816 F.3d 502, 511 (8th Cir. 2016). In addition, Rule 404(b) evidence is subject to Rule 403, *id.*, which provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis" or "is so inflammatory on its face as to divert the jury's attention from the material issues in the trial." *Wright*, 993 F.3d at 1061.

Atkins claims that the cellphone videos and screenshots were unfairly prejudicial under Rule 403 because they depict him using "highly misogynistic and disparaging language, including . . . the N-word." He contends that this language had the tendency to sway the jury to convict him regardless of his actual guilt.

To be sure, Atkins uses quite derogatory language in the videos. In one, he references "n-----s' ho's stables" and promises to "knock that b---h out of [her

shoes]." In the other, he says that "n----s gonna hate" and that "any b---h with me [is] goin' to the top." Depictions of a defendant using vulgar or inflammatory language like this can present Rule 403 concerns. *See United States v. Moore*, 639 F.3d 443, 448 (8th Cir. 2011). Nonetheless, we are not convinced that the admission of this evidence was an abuse of discretion. *See Wright*, 993 F.3d at 1061.

The videos and screenshots were highly probative of Atkins's plan to recruit women, such as L.D., for prostitution. In the videos, Atkins discusses his efforts to employ women by promising money, status, and luxury footwear. His liberal use of words like "ho" and "stable" was particularly relevant because, according to expert testimony presented by the Government, these are common terms used by those involved with sex trafficking. Further, these videos were recorded within mere months of when L.D. claims that Atkins reached out to her and allowed her to live with him so long as she sold herself for sex. Given the evidence's direct relevance to the sex trafficking offense with which Atkins was charged, any unfair prejudice arising from Atkins's choice to discuss his plan in inflammatory terms did not outweigh—much less *substantially* outweigh—the evidence's probative value. *See Wright*, 993 F.3d at 1061-63 (explaining that a reviewing court affords "great deference to the district court's balancing of the probative value and prejudicial impact of the evidence" (internal quotation marks omitted)). Moreover, the district court's limiting instructions prior to the introduction of this evidence further allayed any Rule 403 concerns. *See Contreras*, 816 F.3d at 512. Accordingly, the district court did not abuse its discretion in admitting the evidence.

## V.

Finally, we consider Atkins's argument that the district court erred in imposing two of the special conditions of supervised release. Atkins maintains that Special Condition 2, prohibiting him from "view[ing] or possess[ing] . . . material that would compromise [his] sex specific treatment," is unconstitutionally vague and that Special Condition 3, prohibiting him from "enter[ing] . . . adult-themed entertainment businesses or any establishments where such materials or

entertainment is available," is overbroad. Ordinarily, we review the terms and conditions of a defendant's supervised release for an abuse of discretion, *United States v. Phillips*, 785 F.3d 282, 284 (8th Cir. 2015), but "when a defendant challenges a special condition on constitutional grounds[,] . . . we review de novo," *United States v. Washington*, 893 F.3d 1076, 1081 (8th Cir. 2018).

Although a sentencing judge has "broad discretion" when imposing terms of supervised release, we have said that a special condition of supervised release is unconstitutionally vague when it "fails to convey sufficiently definite warning as to the proscribed conduct . . . when measured by common understanding and practices." *Id*. (brackets and internal quotation marks omitted). Similarly, a special condition is impermissibly overbroad when "its overbreadth is real and substantial in relation to its plainly legitimate sweep." *United States v. Bordman*, 895 F.3d 1048, 1059-60 (8th Cir. 2018) ("[T]he conditions must not constrain the defendant's liberty more than reasonably necessary to deter criminal conduct, protect the public, and promote [the defendant's] correctional needs." (second alteration in original)).

As the Government concedes, Atkins is correct that the two special conditions are unconstitutionally vague and overbroad, respectively. In *United States v. Cooper*, No. 21-2158, 2021 WL 6101251, at \*2 (8th Cir. Dec. 21, 2021) (unpublished), we held that a condition identical to Special Condition 2 was impermissibly vague because a prohibition on "material that would compromise the defendant's sex offense-specific treatment" affords "insufficient notice as to the proscribed conduct." Consequently, we directed that the condition be amended on remand to include the following clarifying phrase: " . . . if the defendant is so notified by the probation office." *Id*. Similarly, in *United States v. Adams*, 12 F.4th 883, 889 (8th Cir. 2021), we held that a condition identical to Special Condition 3 was impermissibly overbroad because it "would prohibit [the defendant] from entering businesses like convenience stores and book stores." We therefore directed the district court to amend the language on remand so that the prohibition would "be limited to establishments whose primary business involve[s] sex-themed material or entertainment." *Id*.

While the Government does not object to a limited remand to correct Special Conditions 2 and 3 in light of *Cooper* and *Adams*, Atkins insists that the conditions be vacated. We do not agree with Atkins that full vacatur is needed; rather, consistent with our past decisions, we will remand for the narrow purpose of amending the written judgment as it relates to Special Conditions 2 and 3. *See Adams*, 12 F.4th at 889.

## VI.

For the foregoing reasons, we affirm Atkins's conviction for sex trafficking of a minor, but we remand for clarification of Special Conditions 2 and 3 in a manner consistent with this opinion.

_____