# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1547
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Willis

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 10, 2024
Filed: May 13, 2024
_____

Before LOKEN, KELLY, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.

In Faretta v. California, the Supreme Court held that a criminal defendant has a Sixth Amendment right "to conduct his own defense" without the assistance of counsel if the defendant "knowingly and intelligently" waives the right to counsel after being "made aware of the dangers and disadvantages of self-representation." 422 U.S. 806, 835-36 (1975). This right, however, is not absolute. If granted, it may

be revoked by the trial court if the defendant "engages in serious and obstructionist misconduct." Id. at 834 n.46, citing Illinois v. Allen, 397 U.S. 337 (1970).

Charged with being a felon in possession of a firearm, Anthony Willis filed a letter that the magistrate judge construed as a motion to remove his appointed counsel and to proceed *pro se*. After a Faretta hearing, the magistrate judge concluded that Willis was competent to represent himself and had knowingly and voluntarily waived his right to counsel. The magistrate judge granted Willis's request to represent himself, appointed standby counsel, and warned Willis that his right to self-representation could be revoked if he conducted himself in an obstructive or disruptive manner. Months later, after extensive pretrial proceedings dominated by Willis's repeated assertion of "sovereign citizen" arguments and defenses, the parties appeared for a final pretrial conference the morning of trial. When Willis ignored a warning and again asserted his sovereign citizen theories and defenses,[1] the district court ruled, "You have forfeited your right to represent yourself" -- standby counsel "is going to represent you now." A jury convicted Willis, and the district court sentenced him to 228 months imprisonment.

Still represented by standby counsel, Willis appeals his conviction and sentence, arguing the district court erred by revoking his right to represent himself on the morning of trial and raising two other issues.[2] We review the district court's decision to revoke Willis's right of self-representation *de novo*. United States v. Mabie, 663 F.3d 322, 328 (8th Cir. 2011), cert. denied, 528 U.S. 829 (2012). We

---

[1]"Sovereign citizens are a loosely-affiliated group who believe government in the United States operates illegitimately and outside the bounds of its jurisdiction. . . . The FBI has labeled the sovereign citizens a domestic terrorist group." Waters v. Madson, 921 F.3d 725, 732 n.4 (8th Cir. 2019) (citations omitted).

[2]At Willis's request, we granted him leave to file a *pro se* supplemental brief in which he raises additional issues not addressed by counsel's brief, some relating to the trial and others pursuing his sovereign citizen theories.

conclude that the record at the time the district court revoked Willis's right to represent himself does not reflect that he had engaged or would engage in the "serious and obstructionist misconduct" that <u>Faretta</u> and our controlling precedents require. We therefore reverse the judgment of conviction and remand for further proceedings.

## I.

On July 19, 2021, St. Louis police officers observed a traffic violation and attempted a traffic stop. The driver fled at high speed. After police disabled the vehicle with a spike strip, it collided with another vehicle. The driver fled on foot but was recognized while attempting to conceal himself and arrested. Police found a Glock 22 handgun in the passenger seat. The suspect was identified as Willis, a background check revealed three prior armed robbery felony convictions, and a federal grand jury indicted Willis in October 2021, charging him with being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). An attorney with the Federal Public Defender's office was appointed to represent him. An August 2022 superseding indictment charged that Willis is an armed career criminal subject to enhanced penalties under 18 U.S.C. § 924(e).[3]

In January 2022, Willis wrote to the assigned magistrate judge stating that appointed counsel was not providing a defense "under my guidance" and asking that Willis be allowed to exercise "the option to go Pro Se." The magistrate judge ordered a <u>Faretta</u> hearing, held in person in March after Willis refused to leave his cell to participate in a hearing by Zoom. Willis was asked if he still requested to continue without an attorney:

---

[3]The government obtained the superceding indictment in response to the Supreme Court's decision in <u>Wooden v. United States</u>, 595 U.S. 360 (2022).

**The Defendant:** Yes, ma'am. . . . I'm here on special appearance. I'm the beneficiary. I don't have a need for no type of legal representation. I'm a third-party intervener myself, so -- I'm here to represent the defendant. I don't need no representation myself.

The magistrate judge engaged Willis in a lengthy colloquy regarding his right to self-representation and the disadvantages he would face representing himself. The court offered to appoint substitute counsel if Willis was not satisfied with current counsel and explained the availability and duties of stand-by counsel if Willis represented himself. At the conclusion, the magistrate judge concluded that Willis was competent to represent himself and that his waiver of the right to counsel was knowing and voluntary. The judge granted Willis's request to represent himself, appointed standby counsel, and warned Willis that his right to self-representation could be revoked if he conducted himself in a manner "that is obstructive, that slows down the process," or is "disruptive."

Willis then raised a question "on the record":

**The Defendant:** Okay, you said earlier that I'm the defendant?

**The Court:** You don't know if you're the defendant?

**The Defendant:** I don't believe that I am, no, ma'am, just by how my name's spelled on all the paperwork. It's all in capital letters. . . . [T]here's ramifications to it that people don't understand. . . . I don't want to speak my side and then be punished for it. . . .

**The Court:** I've granted your request to represent yourself. . . .

**The Defendant:** . . . I'm here as a third-party, Judge Mensah. I'm not the one on trial. I mean I'm not the one needing representation. Can you . . . tell me who the defendant is or what the defendant is? Is it true that the defendant is not anything of flesh and blood?

**The Court:** The person who was given the name Anthony Willis at the time of birth, as you testified when I first asked you that question earlier today . . . . is the person who will ultimately be prosecuted, and if found guilty, convicted, and who will ultimately be sent to prison if there is a term of imprisonment imposed . . . .

**The Defendant:** Do I not have a right to subrogation?

\* \* \* \* \*

**The Court:** I don't even understand what that means.

**The Defendant:** That means, do I not have a right to be separated from . . . the person -- "person" in legal terms don't mean human flesh and blood. "Person" in legal terms means entity or corporation or things of that nature. That's why I say, I'm here as a third-party intervenor, Judge Honorable Mensah. . . . I'm not the one needing representation is what I'm saying. That's why I asked, do I not have a right to subrogation? That's to separate me from my trust. And that's what's being on trial. . . .

\* \* \* \* \*

**The Defendant:** So what about all the paperwork I filed . . . .? It's my understanding, your Honor, that it's commercial. This is commercial law. . . .

**The Court:** What I saw were a bunch of letters that don't mean anything to me. If you're asking the Court to rule on something, then you have to file a motion asking the Court to actually make a ruling.

Later that month, Willis filed a "Notice of Nil Dicit Default Judgment" stating that an "offer in contracting, in the form of an Indictment, was made to Anthony Willis," that Willis "entered it, with a counter claim of, Conditional Acceptance," and that the prosecutor "never responded." Willis requested "that [the criminal case] be abandoned, due to an Unconscionable Contract." In a July Opinion and Report, the

magistrate judge responded that the request "appears to seek relief (i.e. default judgment) that is not available to a defendant in a criminal prosecution" and that "the indictment in this case . . . complies with the requirements of Rule 7(c), and comports with the requirement in the Sixth Amendment that the defendant be informed of the nature and cause of the accusation."

At an in-person Status Conference on August 3, 2022, the district judge took up the issue of Willis "[going] forward in this case without an attorney." Asked whether he understood he has a constitutional right to have an attorney represent him at no cost, Willis responded:

> **The Defendant:** I get that part. But . . . the prosecutor . . . what he is to the United States, that's what I am to Anthony Willis. . . . If I was to say that [standby counsel] was my lawyer . . . that will be me saying that I am Anthony Willis. And I don't need the representation. I am the representer. . . . I feel like I'm being misunderstood. I don't want you to feel . . . like I'm being some type of belligerent or combatant, but once you know something, you can't not know it. . . .

> **The Court:** Well, I will say this: I don't consider you to be belligerent or combat[ive]. You haven't been here. You have been pleasant and respectful; so I don't construe you any other way than that. . . . But if you are essentially saying that you are a sovereign citizen and the Court doesn't have jurisdiction over you or the like, that's something that the Supreme Court and the United States court system has rejected for decades; and so that not a legal basis . . . for not proceeding against you.

The district judge went on to strongly encourage Willis to let standby counsel represent him. Willis again said he wished to proceed without counsel. The court retained assistant public defender Kayla Williams as standby counsel. The trial was then continued when the grand jury returned a superceding indictment. On the morning trial was to begin, the district judge asked Willis:

**The Court:** And so do you still intend to proceed without an attorney?

**The Defendant:** I am the attorney, in fact.

**The Court:** So you are going to represent yourself?

**The Defendant:** I'm going to represent my property, yes, sir.

**The Court:** Well, we have already talked about these arguments about representing your property or proceeding as a trust. And these sovereign-citizen-like arguments have no basis in American law. . . . So I am not going to allow you to make those arguments.

And if you do make them in front of the jury, I do consider that they will be disruptive and I will take appropriate action, including I can revoke your right to represent yourself. . . . I don't intend to do that unless it becomes a problem, but do you understand all of that?

**The Defendant:** No, sir. Your Honor, I have your defendant right here and I would like to exercise my right to subrogation in surrendering him to you for you to handle this claim.

\* \* \* \* \*

**The Court:** So just as [Magistrate] Judge Mensah told you at the March 1 hearing, your argument about subrogation is nonsensical. It falls into the category of these sovereign citizen arguments you are making and I consider them disruptive. And I will not permit you to continue to make those arguments. . . . You understand the warnings I gave you; correct?

**The Defendant:** No, sir.

**The Court:** Well, tell me what you don't understand.

**The Defendant:** I don't agree to stand under them . . . . [I]t's obvious . . . right here on this paper, you got the United States of America as the plaintiff. I don't see the United States of America anywhere in this courtroom. And just as [prosecutor] Martin is the representative of the United States, so am I the representative of Anthony Willis. . . . And I have proof . . . right here with my certificate of live birth that I am not the name that's presented in the indictment.

After the parties produced two Missouri Certificates of Live Birth for Anthony Willis, the district judge advised, "I am no longer going to entertain any arguments . . . that you are not the proper person before this Court or . . . have some right of subrogation or that you are proceeding as the representative of Anthony Willis . . . Do you understand that?"

\* \* \* \* \*

**The Defendant:** I don't understand how me speaking the truth can result to me being gagged.

**The Court:** That's not my question. My question is: Do you understand what I have told you, yes or no?

**The Defendant:** I get what you are saying, yes, sir.

**The Court:** Okay. This is my last warning to you, Mr. Willis. One more time . . . and Ms. Williams is going to be representing you because I'm going to find that you have revoked your right to represent yourself. Do you understand me?

**The Defendant:** I hear you. Yes, sir.

The district judge then explained that Willis would be shackled during the jury trial and asked, "So you still want to represent yourself?"

> **The Defendant:** No, sir. I never agreed to represent myself in the beginning because . . . it's not me being represented, sir.

> **The Court:** Mr. Willis, you have stated unequivocally that you wish to represent yourself and you wish not to have an attorney. Are you changing your mind right now, yes or no?

> **The Defendant:** No, sir. It's not me that's being represented.

> **The Court:** Okay. That's it. . . . Mr. Willis, Ms. Williams is going to represent you now. You have forfeited your right to represent yourself.

The trial proceeded without issue with standby counsel representing Willis. The jury began deliberations around noon the next day.

Early in the deliberations, Juror No. 3 told the deputy clerk he had concerns that a potential guilty verdict against Willis could result in retaliation against him. The district court suspended deliberations and questioned Juror No. 3 in the courtroom with counsel present. The court asked Juror No. 3 whether he could set his concerns aside and not let them affect his judgment in rendering a verdict. He affirmed he could do so, he could be fair and impartial, and he did not believe other jurors were aware of his concerns. The district court conferred with counsel, took the issue under advisement, and concluded there was no sufficient basis to dismiss Juror No. 3. Willis's counsel objected and raises the Juror No. 3 issue on appeal. Given our conclusion that the self-representation issue requires a remand, we need not resolve the issue on this record.

In multiple pretrial proceedings, both the magistrate judge and the district judge questioned Willis extensively about his request not to be represented by counsel, properly emphasizing the disadvantages of doing so, and determined that Willis knowingly, voluntarily, and unequivocally waived his right to counsel and was competent to make the decision to represent himself. Neither party challenges that initial Faretta decision. Rather, the question is whether the court's decision to revoke Willis's right to represent himself on the morning of trial violated his Sixth Amendment right. "[S]elf-representation can be disallowed or terminated when the defendant 'engages in serious obstructionist misconduct.'" United States v. Mosley, 607 F.3d 555, 558 (8th Cir. 2010), quoting United States v. Myers, 503 F.3d 676, 681 (8th Cir. 2007); see Faretta, 422 U.S. at 834 n.46. Though well-established, this standard is often difficult to apply, particularly when, as in this case, the trial court is called upon to predict, prior to trial, whether the defendant, if allowed to represent himself at trial, will engage in serious obstructionist conduct.

The district court revoked Willis's right to self-representation because Willis repeated sovereign-citizen-type arguments at the final pretrial conference, and the court believed Willis would raise these arguments in front of the jury, which would disrupt the trial. The district court's decision to revoke was not based on any defiant or disruptive pretrial conduct that compromised or reflected an intent to delay timely completion of the criminal proceedings against Willis. Instead, the district court revoked self-representation based on a realistic fear that a *pro se* Willis, who had tried several times to argue frivolous legal theories and defenses before the district court, would try to do the same in front of the jury.

Willis's sovereign citizen legal arguments are frivolous and likely to distract a jury and perhaps lengthen the trial. But are they the kind of "serious and obstructionist misconduct" necessary for revocation of the right to self-representation

*before the trial even begins*?  "Courts have repeatedly concluded that 'sovereign citizens' may represent themselves despite their frivolous beliefs about the law." United States v. Taylor, 21 F.4th 94, 102 (3d Cir. 2021) (collecting cases).

We have faced this issue before.  For example, in United States v. Smith, 830 F.3d 803 (8th Cir. 2016), we reversed the district court's pretrial denial of the right to self-representation where the defendant had filed documents frivolously challenging the validity of federal tax laws, filed a frivolous state law trespass claim against the government attorneys prosecuting his case, and was suspected of wanting to advance irrelevant and meritless arguments that the court lacked jurisdiction at trial.  We explained:

> Defendants have a right to present "unorthodox defenses and argue their theories to the bitter end." United States v. Johnson, 610 F.3d 1138, 1147 (9th Cir. 2010). This may require the trial court to tolerate "numerous nonsensical pleadings," even "occasionally wacky" behavior, so long as the defendant is not disruptive or defiant. Id. at 1144. Repeated, frivolous challenges to the court's jurisdiction, to the government's authority to prosecute, or to the validity of the federal laws defendant is charged with violating, are not disruptive or defiant in this sense -- unless they threaten to forestall pretrial or trial proceedings. The proper judicial response is repeated denials and lesser sanctions if necessary. . . . [D]efendants have the right to represent themselves and go down in flames if they wish[ ], a right the district court [is] required to respect. . . . [P]retrial activity is relevant [to continued *pro se* status] only if it affords a strong indication that the defendant[] will disrupt the proceedings in the courtroom.

Id. at 810 (citations and quotations omitted).  Applying Faretta's "serious and obstructionist misconduct" exception, we concluded that "this case shows the total absence of the kind of serious obstructionist misconduct that has led us to deny or revoke requests for self-representation in prior cases." Id. at 811.  Rather, Smith's

pretrial actions, "though frivolous and annoying, were not serious obstructionist misconduct indicating Smith would disrupt the trial." Id.

By contrast, in Mabie, we affirmed pretrial revocation of the right to self-representation of a defendant who used his subpoena powers to threaten and deter potential witnesses, repeatedly disrupted pretrial proceedings, "was openly hostile, disrespectful to the court, and inattentive," and threatened to assault appointed counsel after self-representation was denied. 663 F.3d at 329. In United States v. Luscombe, we upheld revocation of self-representation in the middle of trial when the defendant "repeatedly and frequently defied the district court's orders not to argue with witnesses, not to interrupt witnesses, not to interject his own testimony during his examination of witnesses, to speak clearly and slowly for the jury and court reporter, and to speed up his cross examinations." 950 F.3d 1021, 1030 (8th Cir. 2020). This conduct "was more than just poor 'lawyering' -- it interrupted the trial process and was seriously obstructive." Id.

In United States v. Atkins, we affirmed pretrial denial of the right to self-representation to a defendant who advanced sovereign-citizen-like arguments, not because the arguments were frivolous, but because his pretrial behavior was "serious and obstructionist" -- he "consistently demonstrated his unwillingness to participate in the proceedings by interrupting and arguing with the court, refusing to provide responsive answers, and insisting that '[t]he trial is not going to happen.'" 52 F.4th 745, 751 (8th Cir. 2022). At least once, "unruly" behavior caused him to be removed from the courtroom, giving good cause to believe he would continue to obstruct if allowed to represent himself at trial. Id.

Willis's pretrial behavior in this case was far different than the behavior we concluded was "serious and obstructionist misconduct" in Mabie, Luscombe, and Atkins. The government argues that a trial free of disruption and delay warrants pretrial revocation of the defendant's right of self-representation, citing our decision

in <u>Mosley</u>, where we affirmed pretrial denial of self-representation to a defendant who made sovereign-citizen-type arguments. But in <u>Mosley</u>, the defendant was disruptive and unresponsive at his competency hearing, where he "refused to respond to [the court's] questions and participate in the proceedings." 607 F.3d at 557-59. Refusing to participate in the proceedings, if continued at trial, is serious obstructionist misconduct. Here, Willis gave the court no reason to suspect he would do that. Rather, the government appears to argue that the "disruption and delay" of having to deal with sovereign citizen arguments at trial alone warrants the denial of the right of self-representation. However, as we explained in <u>Smith</u>, having to deal with unorthodox defenses, "wacky behavior," and frivolous *pro se* arguments at trial is not serious obstructionist misconduct that warrants revocation of the defendant's Sixth Amendment right to represent himself -- "unless they threaten to forestall pretrial or trial proceedings." 830 F.3d at 810. Otherwise, "defendants have the right to represent themselves and go down in flames if they wish[], a right the district court [is] required to respect." <u>Id.</u> (quotation omitted).

The government argues that the fact that Willis continued to insist throughout pretrial proceedings that he was not the person named in the indictment, including on the morning of trial, in and of itself gave the district court good cause to revoke Willis's self-representation. We reject this definition of "serious obstructionist misconduct," which negates the *pro se* defendant's right to make erroneous, even frivolous, *pro se* arguments to the jury. Cf. <u>United States v. Ward</u>, 598 F.3d 1054, 1059 (8th Cir. 2010) ("A defendant's constitutional right to be present at his trial includes the right to be an irritating fool in front of a jury of his peers.").

The government does not even argue, much less demonstrate, that Willis was attempting to delay or frustrate the trial when he appeared on the morning of the trial prepared to proceed but unwilling to abandon his belief in legal theories and defenses the district court would instruct the jury to ignore had trial proceeded with Willis representing himself. And relevant fact issues for the jury might be lurking in these

flawed legal theories. Though likely without merit, it would not be "serious obstructionist misconduct" if, at trial, Willis challenged the authenticity of the Certificates of Live Birth or offered contrary evidence to show that he was not the Anthony Willis who committed the offense charged by the government.

The district judge on the morning of trial was understandably frustrated with Willis's equivocal refusal to be represented by counsel and his insistence on repeating legal theories that were likely to make the trial difficult to manage without helping Willis's defense. But given the lack of defiant or physically disruptive pretrial conduct, and Willis's consistent respect for the court and the proceedings, which the district judge characterized at the prior hearing as "pleasant and respectful," we conclude based on our above-summarized precedents that the court erred in prematurely revoking Willis's Sixth Amendment right to represent himself at trial. As cases such as Smith and Luscombe make clear, had trial commenced with Willis representing himself, and had Willis repeated his frivolous challenges to the court's jurisdiction or the government's authority to prosecute, "[t]he proper judicial response is repeated denials and lesser sanctions if necessary." Smith, 830 F.3d at 810; see Luscombe, 950 F.3d at 1030; Jones v. Norman, 633 F.3d 661, 669 (8th Cir. 2011).

After careful review of the entire pretrial record, we conclude the district court erred in revoking Willis's constitutional right of self-representation on the eve of trial because of his repeated assertion of judicially-rejected sovereign citizen theories and defenses. "An impermissible denial of self-representation cannot be harmless." Smith, 830 F.3d at 811 (citations omitted). Accordingly, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion. As the case must be remanded, we decline to consider the other issues raised by counsel and by Willis *pro se.*

_____